Good morning, Your Honors. My name is David McDevitt. I'm counsel for the appellant. Could you pull that mic a little closer? Yeah. Yes, sir. My name is David McDevitt. I'm the counsel for the appellant, Stephen Holzman. We appeal the district court's dismissal on a Rule 12b6 motion of Mr. Holzman's claims against the appellees, Malcolm S. Gerald & Associates, and LVNV Funding, LLC. The action was brought under the Fair Debt Collection Practices Act and the Florida Consumer Credit Protection Act. And there were claims under the FDCPA brought under 1692e, which prohibits the use of false, deceptive, or misleading representations or means in connection with the collection of any debt. And under the Florida statute, that was dismissed for lack of appended jurisdiction. And we would request that the court reverse and remand this action and vacate the district court's order. I would like, in considering our request, to imagine that this debt collection letter, from which this case stems, had it read at the top in big, bold letters, bigger than anything else on the page, we will not sue or attempt to collect, to garnish your wages over this debt. We are merely seeking voluntary payment from you. Imagine how that would change the interpretation that a consumer has when they receive a collection letter like this, seeking a debt that they haven't paid in the past. Now, the issue in this case is that the debt that they're seeking to collect is time barred. It can't be enforced under Florida law. Florida law has a five-year statute of limitations. The debt in this case was charged off in 2007. It was almost eight years past the, well, almost eight years had run. For sure, for sure, it would be against the law to have a letter that says we will sue you because the status of the loan is that you can't sue. The statute of limitations has expired. Is it, the letter clearly suggests another step might be taken, you know, but doesn't say what it is, but it says let us know by this date. And so, but could the other step also be you don't pay this amount of money, we're going to keep writing you letters. Could that not be, and then that would be totally legal, would it not, for them to continue to try to request repayment of the debt without taking legal action. It would be illegal to make more than one solicitation, would it not? Well, with respect to your first question, is it not plausible that they're just going to send more letters? Sure, that's plausible, but you know, when a collector goes and brings a lawsuit, usually they send a letter beforehand, not always. But for the most part, when you get a debt collection letter, or if you get sued, you have received debt collection letters in the past. So it is a plausible interpretation of receiving this letter that the debt is judicially enforceable and that one consequence. Forget that part though, but if they said clearly, if you don't pay this urging you to pay your debt, you have no problem with that as long as, as long as the threat is only we're just going to keep bothering you, we're going to keep sending letters. Nothing illegal about that, is there? Well, I think that's a different question, and I would urge that, I do think that actually does violate the FDCPA. Why? I think it's an unfair practice. Well, that's just because you think so. Do we have something more than that? If you can voluntarily collect a debt for which the statute of limitations is expired, is there anything about that permission that says you can't try more than one time? Well, I don't think that continuing to pursue a person on a debt that they can't pay, or that they can't be compelled to pay, I don't think that's a fair practice under the FDCPA. But again, I think that is a separate question than whether the dismissal on 12B6 here was erroneous. Isn't the real problem that the existence of another possible plausible interpretation of the letter, such as the one that Judge Korns put to you, doesn't do it given the standard that applies? The standard this court has held is whether the least sophisticated consumer would have been deceived. Now, wouldn't it be for the jury to decide whether the least sophisticated consumer faced with this letter would or would not be deceived? Yes, so the standard that has been adopted in numerous circuits is that if there are more than one reasonable interpretation, and one of those reasonable interpretations that could be held by a least sophisticated consumer is false, then the letter is deceptive as a matter of law under the FDCPA. And therefore, it is a fact question for the jury to decide whether the least sophisticated consumer or an unsophisticated person could, not necessarily would, but could think that this is legally enforceable. And I think that's where the real issue comes up. If a person reads this and thinks that they're going to be sued, and that's not at a bizarre or idiosyncratic interpretation of the communication from the debt collector, and that's not true because it can't happen, then the FDCPA has been violated. It's not necessary that all the unsophisticated consumers would or that most of them would think they're going to be sued. The question is whether they might think they're going to be sued and whether that's a reasonable interpretation. And I'm going to explain why I do think it's a reasonable and not a bizarre interpretation. First, who would buy an unenforceable debt? Just the mere fact that you're getting a letter. We pleaded that this was the initial communication. And on the last page of the letter, at least as it was filed, it contains the initial G notices under 1692G that if unless you dispute it within 30 days, they'll presume it's valid. So it was the initial communication. It means that you now have a new collector coming after you, and I believe it was the first time that LVNV funding came after Mr. Holtzman. Certainly the first time that Malcolm S. Gerald and Associates... Does it say this is the first time anyone had tried to collect from him at all? Well, not necessarily. What it means is that there's a new sheriff in town. There's a new person on the case. A new entity, okay. So it's a plausible interpretation that somebody new has bought my debt. Even though I haven't been sued now. Or at the very least, they've got a new collector on the case, and maybe he's going to recommend that they sue me over this. I have forgotten whether or not the complaint indicated, or the letter, how old the debt was. Yeah, so the debt was... I mean, when it was incurred. Well, I'm not sure when it was incurred, but it was charged off. Usually they don't say when they were incurred.  Did this letter say that? I've forgotten. It says when it was charged off. And charged off means it's a bad debt. Yeah, I understand that, but it doesn't say when the debt, the obligation was incurred. Well, no, but the obligation was... I'm not trying to argue with you. I'm just trying to find out, did the letter say when it was incurred? I've forgotten. No, it's a credit card. So it's a revolving account. It said you have this debt. Right. And it runs from the date of last payment, or the date of default. And six months after that is when the credit card company's charged it off. So I gather your argument, then, is the only letter that would suffice, for which we could find as a matter of law, the letter is not misleading, would be a letter that said, look, we'd like you to pay this money. We may still continue to ask you to pay this money, but we won't let you know. We can't sue you or garnish your wages if you don't. That letter you would have no problem with, I gather. Well, I mean, barring my position that I think it's an unfair practice to seek payment from a consumer who cannot be... If it said... The law is clear. You can seek voluntary payment from someone, even if the statute of limitations has expired. That's clear, is it not? I don't think anybody has squarely addressed that question. I think in all cases, in McMahon and Buchanan and Doherty, they all assume that fact to be true for the purposes of resolving the question at hand, which was a 12B6 claim about deceptiveness or misleading nature of communication. But I don't think it's been ever squarely approached, is it not, as a matter of law, either in the Seventh Circuit, I mentioned this in my reply brief, Pantoa, they had... They said, maybe we should just make this unlawful entirely. And that was actually involving a letter that has a similar statement like that. The FTC, in a decree involving a particular debt collector, gave some language that it suggested that because of the age of this debt, we will not sue you. Or the law limits how long you may be sued because of the age of this debt. We will not sue you. And they omitted the first of those two sentences. And on summary judgment, they concluded, even without any additional evidence, that that was misleading as a matter of law. And they questioned whether or not they should just outlaw the knowing... attempt to collect a known time bar debt because it is strife with possibility of deception. And what will actually happen... They questioned it but made a decision, the agency made a decision not to outlaw that, correct? They said that the appellant hadn't requested that holding. They pontificated whether that was the appropriate result. And that's something we don't have to reach in this case, isn't it? Well, to resolve the 1692F claim, if you don't think it's misleading, then you could at least find under 1692F that it is unfair. Because I think that there are things that are unfair that are not necessarily misleading. Couldn't we flip it? Couldn't we find it's misleading and find that it's not inherently unfair to try to collect a debt even if the statute's expired? Well, I would say that in that case, that would be an advisory opinion if you do find it misleading. Because if something is misleading, it's also unfair. So at least this letter is unfair. So then to go further and say, we're declaring as a rule in this case, I think that if you wanted to make it a rule that it is unfair, I think that would make sense and that would be good jurisprudence. Because the debt-buying industry is going to keep on tailoring these letters. The other letters in those other cases use the term settle. They talk about settlement offers. This letter uses the term offer. And it creates a sense that we're coming after you now. And we're going to make you an offer you can't refuse. And you better respond by this date. And we want to help you out here. But they say resolve as opposed to settle. But our job is to decide this case, isn't it? Whether we agree with you or don't agree with you, that a desirable public policy would be to foreclose any effort to collect a debt. The suit on which would be barred by the statute of limitation is neither here nor there. If we believe that summary judgment was inappropriate or dismissal was inappropriate, because the letter is susceptible of an interpretation that would be misleading to the least sophisticated consumer, that's all you need in this case, right? This letter, this time. Yes, Your Honor. I agree it is completely discretionary, the request I've made. And the reason I've made it is because the debt collection industry, the debt-buying industry, they're just going to change their letters and they're going to keep on doing this practice. And unless there's a clear statement by an appellate court that has the power to make law, they're going to keep doing it. Well, it could be a clear statement by the Congress of the United States, right? That would put an end to it. The FDCPA hasn't been amended substantively since it was enacted. But with one exception, that's not going to really happen. The debt-buying industry has been duping people out of tens of millions of dollars, maybe hundreds, definitely tens of millions of dollars per year for the past seven or eight or nine years, since somebody got the bright idea of buying up these- You mean collecting debt that the statute has expired on. Correct. Because the credit industry thinks these, the creditors think that these are worthless. And somebody said, why don't we- I mean, let me tell you, devil's advocate. I mean, I understand the seeming unfairness to someone who doesn't understand that they couldn't have their debt collected on because of the statute. And that seems unfair for somebody to mislead them. On the other hand, as Judge Kaplan said, Congress has not outlawed the practice of seeking to collect the debt when the statute has expired. And you can make an argument, too, that for small merchants who have debt on their hands, thin profit margin, people haven't paid the debt. Your client didn't go bankrupt. He just chose not to pay the debt. Nothing moral high ground about your client in this situation. He chose not to pay legitimate debt. And that the merchant can make a cent on the dollar, maybe, that will be helpful to sell to someone who might have a chance to collect that debt and help that merchant who did nothing wrong except extend credit to someone who refused to pay. So I think, you know, again, I agree with Judge Kaplan. It's a congressional decision. But I'm not sure I agree with you that the policy issues go in all one direction. Well, I would say that the creditor, the original creditor, in this case, it's HSBC Bank. It's not a small creditor. They have the ability to bring a lawsuit within five years. And they didn't do that. So I think that while he has a moral obligation to pay the debt, his moral obligation runs the HSBC Bank. It doesn't run to LVNB funding. And that HSBC Bank can make a few pennies off of it doesn't change the FDCPA analysis. I mean, they should have sued him under the time required by the state statute. All right. Thank you. Thank you. You say some rebuttal. Thanks. Mr. Golden. Good morning, Your Honor. Mr. Golden, are you an Alabama? I don't mean Alabama. Atlanta lawyer? An Atlanta warrior. From here? No, I'm from Tampa. From Wisconsin. Well, the reason I was going to say when the Truth in Lending Act was enacted, oh, back in about 1978, thereabouts, a cottage industry grew up in Atlanta in which lawyers would send a client or a borrower to four or five small loan companies in the same day. And they would have different contracts or notes or installment agreements, whatever the case. And then a suit would be filed because this wasn't quite right and that wasn't quite right and everything. And I can remember some of the judges on our court kept saying, why didn't Congress attach a form to the Truth in Lending Act? Because we'd eliminate a lot of litigation. And this cottage industry went away. It took about five years for the law finally to settle so creditors knew what they needed to put in the blanks and plaintiff's lawyers couldn't get anywhere with it. Is that sort of what we have here? We got an old man's land floating around out there. We do and we don't. And you got one district judge says this, one says that, and who in the world is the least sophisticated debtor? For example, one fact I think is important, how old is the debt? If you got a 10-year-old debt, anybody knows you can't collect it, probably. Right. Well, I mean there... But if the debt is right on the cusp of the running of limitations, that's a different thing, but anyway. Well, and there are different factors that go into that. This is a sorry state of affairs. Right. You know, that statute of limitations argument isn't cut and dried. He refers to the charge-off date, but that's not necessarily the drop-dead date because depending again, and this is where we get sort of far afield in terms of how do we determine statute of limitations? What is the agreement that applies? And what is the choice of law provision in that agreement? And what does that choice of law statute say about what can toll the statute of limitations? A promise to pay, an acknowledgement of debt, all of these sorts of things. So the charge-off date may have some relevance, but it's not the date in terms of statute of limitations. I don't know the local law here, I'm frank to admit, but where I come from, if somebody moves out of state for a period, the statute tolls while they're residing out of state. Well, I know that Delaware has that sort of statute that says if you can't be served in the state because you're absent from the state, the statute of limitations tolls. So, and I know that this has nothing to do with this case, but it's certainly come up in other matters where you will have someone who lives in, say, Washington state, and they have a credit card agreement that has a choice of law provision for Delaware, and they've never been to Delaware. And so it does. Is that part of your argument then, that you're placing too heavy a burden on the debt collector with all the different state laws to ever know if the statute's run or not? Certainly. Certainly. And is that something we can consider? Because this statute's a pretty strict liability statute. That dovetails into this whole concept that debt collectors now are being put in this position of providing some sort of legal opinion to debtors on whether or not the statute of limitations has run with respect to their debt, and whether or not certain remedies therefore no longer exist. And that's... How many states have a provision which say, if you made a payment, you start the statute over again? There are... Florida's sort of tricky because we're actually... What is the percentage that... I don't know what the percentage of states are. I know what, I know specifically what the law is in Florida, that a mere promise to pay prior to statute of limitations will, or a partial payment, will start a new statute of limitations because it's considered a new promise to pay. But if the statute of limitations has run, there has to be a written acknowledgement in writing of the debt and a promise to pay it. So... That all goes to the question of whether if we were legislators or needed to adopt a per se rule to resolve this appeal, what we ought to do. But for present purposes, we have a ruling on a motion to dismiss. The complaint alleges, I believe, does it not, that the statute had run? It does. We're obliged to assume that for purposes of deciding this case. And so the question here is whether the least sophisticated consumer could have been misled by the letter. Isn't that right? I think we're willing, from my standpoint, from my client's standpoint, to accept that, what I would call a legal conclusion, that the statute of limitations had run for the sake of this argument. We didn't dispute that. I mean, we're on a motion to dismiss, and so it wasn't an issue that was going to be resolved on a motion to dismiss. So it's this letter. So the question is, yes, if we assume for the sake of argument the debt was in fact time barred, does this letter violate the FDCPA? One of the things the FDCPA does contain is it doesn't have a form, but it has 1692G, which sets out specifically what a debt collector is supposed to put in a letter. They're trying to do what the Congress should have done with the Truth in Writing Act. Right. And what's happened over the course of the last 40 years now, since the act took place, is that we have, as you said, various district court judges, circuit court judges saying, yeah, well, here's what 1692G says, but you should also tell them this, or you should also tell them this, and you should also tell them this. So the fact that debt collectors in general, and debt buyers in specific, are changing their letters, well, of course they are, because the legal landscape is constantly changing. There is no form. And there's nothing worse than uncertainty in the rule of law. Right. Because it costs everybody. That's one of the things that my clients, when they come to me, and people in general who are in business, want to know what can I do, what is permitted under the law. And it doesn't do anybody any favors to say, I can't tell you. And so what we have in this case is we have those cases from the third, fifth, and seventh, I think it's the third, fifth, and seventh, that all said the use of the word settlement or settlement offer violates the FDCPA because it would lead the least sophisticated consumer to conclude that you could be sued. So there's then a course correction, all right, that takes place. You say, all right, well, we can't use settlement offer or settle in any of these letters anymore. So we have to take that out. Can't use the word judgment. Right. We can't use anything like that. So in this case, the word, instead of settle, it becomes resolve. But from the- Which is a synonym of settle, at least in some uses. This is- Right. Well, it can be. And here's the problem is that, all right, so now what Appellant is asking is that, no, you need to find that, yes, resolve is the same as settle for this purpose. But if you look at how the other courts, the other circuit courts, reach their conclusion with respect to settlement and settlement offers, the same doesn't apply really with resolve in terms of, you know, it's sort of this route that says, well, if I Google this or if I trace this to Black's Law Dictionary, resolve is, it isn't the same, all right? But let's- The size of the debt is relevant? The size of the debt? Size of the debt. If it's a five-figure debt, the likelihood is it was a more sophisticated borrower. I don't know. As opposed to $100. I don't know. I guess I don't have an opinion on that. I don't know. I know, I guess- I think you can draw the inference of the larger the debt, probably the more sophisticated the debtor. I consider myself to be more sophisticated now than I was 30 years ago, but I have a bigger mortgage now than I did then. Maybe that's a problem. Well, congratulations. So I don't know. But I have less credit card debt, right? Well, clearly, I mean, you obviously, you'd like to know what words to say because it's very expensive and you're waiting. And then, of course, having 20 juries decide, the jury knows, what does the jury know? You're going to get maybe two different decisions on that. But clearly, in this letter, you were suggesting that something else might happen. I'm less worried about the resolve part than the time limit part. And the time limit says, we need to hear from you by X day. And that suggests to most people, if we don't hear from you, something's going to happen. And what do you think the least sophisticated consumer could reasonably infer might be the something that's going to happen if they don't get back to you? That this offer is going to be rescinded and not available. And, okay, so you rescind the offer. And what do they think is going to happen when you rescind the offer? I think you have to look at it in the context of the discount, okay? You owe $5,000. We'll accept the $1,000, but only if you pay it by the end of next week. If you don't pay it by the end of next week, my thing says, We're going to do something to get the $1,000. They're not going to accept the $1,000. We're going to be back to square one. And what I'd ask your opposing counsel, because this person may have been getting letters for 10 or 15 years. I don't know how old the dad is, and he pretty much knows that nobody's going to be suing me on this thing. It's a small amount of money. He may think you're going to just keep sending him letters, but your opposing counsel says he also might equally think you're going to sue him, which becomes a problem for you. I don't think that's a plausible inference from just those facts. I think what we do, we tend to do, is we apply, since we operate in this system, we apply that level of sophistication because we operate inside this system on a daily basis. And so litigation, to us, is something that's at the forefront of our minds. That's what we do. But I think a person who gets a letter and says, You owe $5,000. We'll accept $1,000 by the end of the week. But if you don't take that off by the end of the week, we're not required or we're not inclined to offer it again. A very unsophisticated person who doesn't think about litigation a lot may very well think in terms of the paycheck being garnished. Well, that's a different issue, and that's really not a contention in this case. Well, no, but it goes hand in glove with litigation. You can't, at least in most places, garnish somebody's paycheck without starting an action. I honestly don't believe the least sophisticated consumer understands garnishment at all. I think the least sophisticated consumer would believe, because this is a tactic that I've seen in debt collection. How do we decide what is the least sophisticated debtor? Everybody signs on to that proposition. Yeah, it's an objective standard. How do you decide that? You know, in a negligence action, a reasonable person is a jury question. I would think you'd have to adduce evidence. Why not? Well, see, and that's the other thing that's sort of interesting, Judge, is that the Seventh Circuit uses the unsophisticated consumer standard. The Eleventh Circuit uses the least sophisticated consumer standard. They're all the same thing. We're talking about sophisticated. Right. It's a fact issue. It's not a fact issue. It's an objective standard, because these letter cases— And you can decide sophistication as a matter of law? Yeah, it happens all the time. All the time. We don't decide negligence as a matter of law. It's a different—that's a reasonable— We don't decide reasonable notice as a matter of law. That's a reasonableness standard. This is an objective— We do it at the extremes. At the extremes, we do. So what these courts that are using that, in my view, are using that formula, they're talking about the extremes. They're saying as a matter of law, nobody would not know that it's a time-barred debt and they don't have to pay it. Well, it assumes— And it can't be collected. It assumes a level of sophistication. You agree that if it's in the middle, you've got a fact issue. It's not a fact issue generally. It's not, because that's why— How in the world can you say least sophisticated debtor is not a—or unsophisticated is not a fact issue? Well, because this court has done it itself. This court has time and time again issued orders on letters. I mean, we've got judges deciding that, but the question of my mind is, what do they draw on? They draw on the fact that it is still an objective standard. It's not subjective. And when you look at it— I understand it's an objective standard. How do you discern what it is? It isn't a negligence action. All actions that go to a jury on reasonableness, negligence, all those sorts of things, are—you use the objective person, a reasonable person. So you're talking about a reasonably sophisticated person or unsophisticated. Well, who is that? I can't tell you. I can only tell you what the case law says. It's the jury's dumb cousins, Harvey. Well, it's— Isn't it, really? I don't think so. I think it's more than that. It envisions a level of sophistication, not a four-year-old child, not a 12-year-old child, a level of sophistication, someone who has entered into credit— You've got a country with people who are illiterate all the way to geniuses. Right. And it's not at either end of the scale. And come from all sorts of socioeconomic standards. Well, your opposing counsel would agree that there's some words you could use that would fit any objective standard, which is, if you put in bold print, we won't sue you if you don't pay us. Well, it's— Even the least, least, least sophisticated person, I gather he'd agree. That would—I think that's all he'd accept. I won't speak for him, but I know in his brief, he points out a number of cases, and he pointed out the Pantoja case from the Seventh Circuit that says even if you have that language, it's still a violation. So it— He thinks it's unfair to even try to collect your money. I mean, and if you listen to the guts of that argument, the argument is, first of all, I want you to explicitly say that all state laws regarding statute of limitations, to the extent they don't extinguish debt, are preempted by the FDCPA, and you can't collect debt that's time-barred. That's his first argument. He wants an explicit ruling that the FDCPA preempts all of those state laws. And the second one is an implicit ruling from the court that you can't collect time-barred debt because there's no letter that you can send that we believe will not create a fear in somebody that if they don't pay— Of course you can collect the time-barred debt. Of course you can. Yeah, it's a moral obligation, a legal obligation, really. Of course, but he explicitly requests the court to do that. There's no remedy. He explicitly requests the court to write out of existence that right that people have, to collect, through non-judicial means, time-barred debt. And when he can't do it explicitly, he asks you to do it implicitly. I think we have your case. Thank you, Your Honor. Before you get started, Mr. McDevitt, here's what troubles me about how we write a rule or how we issue a holding in this case. And that is if there are, in fact, states with all sorts of different statutes of limitations, different tolling rules, a legitimate debt collector might not know if somebody's moved out of state or not, so it's told. How in the world can you write a letter that encompasses all that? How is a debt collector supposed to know what to say to somebody? Because on any given debtor, he may not know for sure, one way or the other, whether the statute of limitations is run. Well, that's where I wanted to start. So federal law under the FCRA only allows the debts to be reported for seven years. So there is some precedent that Congress can sort of legislate across the nation with respect to debtor issues. And seven years is the absolute statute of limitation under federal law. It is the time period after which you may not report on a person's credit report. I don't know what that means. What we're trying to do here is collect a debt. What does it have to do with that? So most states are six years for written contract. Some states are three. Some are four. Some are five. And how many of them hold that if you make a payment, you reignite the obligation? I would estimate about 30. About 30? Yeah. It's about almost half and half. I would say it's a little more than half that it restarts. It's not. And is the reignition of the obligation tied to the length of the statute period? No. Well, maybe I don't understand your question. What I'm saying is if you had a six-year statute limitation, you might have a rule which says if you make a partial payment, it doesn't run another six. But if you had a short period, it might be that a part payment runs it. Statute starts all over again. Yeah. In my experience, the operative effect is that they say, this is how long you have to sue. And then there's another statute that says, here's how you calculate it. Well, you're talking about a statute of repose or something, I suppose. I have not dealt with a state law that involved the statute of repose as opposed to a statute of limitation. But all this complexity is back to how is the debt collector supposed to know all this? And this is a strict liability statute. So I'm gathering if you went to court and we said it's misleading if you made a mistake and the debt collector said, darn, I thought he'd moved to Delaware, but he had. There's no good faith. I mean, how do we manage this rule? Well, it's really not that. So there are only 50 states. The majority of them operate within. Only? That's a lot. But it's really not when you're operating from a computer database standpoint. Every state has a statute of limitations. You can go to creditcards.com and look up the time period. That's what we do in our practice. But as Judge Kaplan said, some states, you can toll it if they've moved out of state. You're not going to know that from just looking at this piece of paper saying the guy owns $600. But that's an argument for not saying you can never be sued on debt. You need to fill it up for your lawyer is what you need. You need to fill it up for your lawyer to figure out what you can do. What I'm saying is that what Judge Kaplan has pointed out is a reason why a debt collector might not want to say you can never be sued on this debt. Because they might be wrong just looking at what's in the database. But if the debt collector thinks that they can actually sue them because they have some reason, they can always try to bring a lawsuit. And the chips will fall where they may. But to let them keep on collecting what they believe to be unequivocally time-barred debt, I don't think is a fair practice. With respect to the statute of limitations and the variances among states, I have not seen a case, and it's never been pointed out to me, where the statute of limitations is chosen by contract as opposed to the state in which the person resides. The statute of limitations in these cases. Let's just finish up on this. How about if, again, since we're pretending to be Congress or the FTC right now, what if the language on the front had said, the statute of limitations may or may not allow us to sue you for this in court. We suggest you get legal advice. Would you like that one? Would that be better? But you'd still be unhappy if it was a scenario where one could clearly infer that you could not sue. If they just give a disclaimer, we don't know whether or not we can collect this based on the length of time the debt has been owed. We suggest you see an attorney. You wouldn't like that either, would you? Because that would scare them even more than this letter that they might get sued. Well, I can say that the language that the collectors have used... But answer me that. That one, I gather, you wouldn't like that disclaimer either. Here's the reality. They're going to put it at the very bottom of a letter. And nobody's ever going to read it. Oh, well, it's going to... My hypothetical, it's in bold print. Everybody can see it. At the top of the page? Absolutely. That's my hypothetical. Yeah, so what do you say to that? If it's in 64-point font or 32-point font or higher, and it's clear and conspicuous, I think that that is sufficient so as to not have a person be duped into making payment that they... Without the realization that they might... Even though the debt collector in this, my hypothetical may know 120% he can't collect. And he's suggesting he might be able to collect. That would be okay with you. What about the 120% I didn't find? He knows for sure. He's saying I may or may not be able to collect. But my particular debt collector knows for sure he can't collect. But he's putting the caveat in because that will be the new form language. It's always going to be a caveat. Seek a lawyer's advice. I would defer to the FTC. I wouldn't want to adopt any language myself. I would say that the FTC has thought this through more than I have. They have put out language. But the Seventh Circuit has said... They said that part of that language, if you omit some of it, is deceptive. And some other district courts have said that even that language is insufficient because there's no... If you try to say too much, you could be misleading them as to reality. Council, I have one question. In 25 words... And just assume with me, as we all do, I think, that for purposes of this appeal, everybody agrees it's a time-barred debt here. In 25 words or less, given that we can resolve this case on the basis of this letter and the agreement that this debt is time-barred for these purposes, why should we go an inch farther in the direction of attempting to formulate some rule that would govern God knows how many cases? Because the FDCPA is a remedial statute meant to protect consumers from trickery. And consumers are still being tricked even after courts have said you can't say settlement offer or said you can't use this language. To go further would to say, generally speaking, if you know it's time-barred and you try to seek the debt anyway, you are engaging in a, per se, unfair or unconscionable or deceptive practice. Because it's going to happen anyway. And they're going to keep doing this. I think your time's up. All right. Thank you, Your Honor. Thank you. Griffin versus Philip Morris.